McGONIGLE v. KANE.            •

1. PLEADING.
Although the allegations of a complaint may not be as definite and certain as good pleading requires, it does not necessarily follow that the pleading is so indefinite and uncertain as to entirely fail to state a cause of·action.

2. SAME.
As a rule, negligence may be pleaded generally.  It is an ultimate fact and only ultimate facts are to be pleaded.

3. PRACTICE.
Evidence of negligence on part of the defendant and of contributory negligence on part of the plaintiff, in an action to recover damages for personal injuries, is for the jury and not for the court to consider.

4. EVIDENCE—OPINIONS OF EXPERTS.
The opinions of men who, by study, observation or experience, have become expert with respect to matters not of common knowledge, may be given in evidence to the jury.

*Appeal from the·District Court of Pueblo County.*

PLAINTIFF in his amended complaint alleges :

"*First:* That on the 22d day of February, A. D. 1890, and prior thereto, James A. McGonigle, the defendant above named, was the contractor for the building of a certain stone and brick building in the city of Pueblo, county of Pueblo, and state of Colorado, which said building, otherwise known as the new Opera House Block, was on said day and for a long time .prior thereto had been in the course of construction by said·defendant, as contractor aforesaid.

"*Second:* That by reason of the premises aforesaid, said defendant became the employer of a large force of men as stone-setters, brick-masons, carpenters, laborers, etc., working in and about the construction of said building, among which said force of men was said Samuel Kane, plaintiff above named, who, for a certain hire and reward, was on said 22d day of February, 1890, and prior thereto, employed by said defendant as boss stone-setter on said building.

"*Third:* That as the construction of said building progressed, it became necessary to raise stone and other heavy building material to the walls and upper floors of said building; and for this purpose defendant had provided and had constructed on the premises a hoisting apparatus, known as an elevator, which said elevator, as defendant is informed and believes, and upon information and belief states, consisted of a carriage or platform of wood connected to a wooden beam above, which said carriage ascended and descended between two upright guides or slides, made of plank, and so placed with reference to said carriage as to permit of considerable oscillation or play of said carriage between said guides or slides. *That at the height at which it was desired to have said carriage stop, there was attached to each of said guides or slides a certain latch, pawl or dog, made of wood and supposed to be held in place by a so-called spring made of metal—to wit, iron, the upper end of which said latches, pawls or dogs were cut on a bevel to correspond to a similar bevel on either end of said beam of said carriage, which said latches, pawls or dogs were intended to catch said beam at either end and hold said carriage in place when the same was raised,* and which said latches, pawls or dogs were so placed that when said carriage was raised and resting on said latches, pawls or dogs, the top of the platform of said carriage was several inches below the floor where said elevator was to be unloaded. That said carriage was raised and lowered by means of a chain or rope attached to said beam and connected with a steam engine and boiler, which said engine and boiler said defendant had provided for that purpose. That in the use of said elevator in the loading and unloading of stone and other material carried thereon, it was necessary for the men engaged therein to go upon said elevator and work thereon, and especially was this the case in the loading and unloading of stone raised thereon to be set in the walls of said building, all of which facts said defendant well knew.

"*Fourth:* That by reason of the premises aforesaid, it became and was the duty of said defendant to provide for

the use of said Samuel Kane safe, secure and suitable appliances and machinery used in and about the construction of said building; *but the said defendant neglected his duty in this behalf and negligently provided said elevator and built and constructed the same so carelessly, negligently and unskillfully, and used in the construction thereof material so unsuitable, insecure and unsafe that the said elevator was not safe for the uses and purposes for which the same was built and provided,* of all of which facts the said defendant well knew and which this said plaintiff did not know.

" That on the said 22d day of February, A. D. 1890, while said plaintiff was engaged in his said employment as aforesaid, and exercising due care and caution upon his part, and was upon said elevator engaged in the work of removing from the carriage thereof a stone that had been raised on said elevator which was intended to be set in the walls of said building, the carriage of said elevator by reason of the negligence, unskillfulness and carelessness hereinbefore complained of and without any fault or negligence on the part of this plaintiff, *broke from its fastenings and fell to the ground below and caused plaintiff*, together with the stone that was being unloaded from said elevator, to fall to the ground a great distance, to wit, about sixty-six (66) feet, whereby and by reason whereof the said plaintiff had a fracture of the nasal bone and a concussion of the spinal cord and brain, and was otherwise wounded, maimed and lamed, and was sick and ill for many weeks, and still is so sick and ill and suffered, and still continues to suffer, great mental and bodily pain and anguish; and from said 22d day of February has been unable to do any work or to earn any compensation whatever, and has reason to believe, and does believe, that he is permanently injured; whereby plaintiff has been injured and damaged to a large amount, to wit, twenty thousand dollars ($20,000), and has been obliged to lay out and expend divers sums of money in and about his cure and the procuring of the necessary assistance and attendance and medicine during the said sickness, in the whole

amounting to a large sum of money, to wit, four hundred (400) dollars.

" Wherefore plaintiff prays judgment against said defendant for the said sum of twenty thousand four hundred dollars ($20,400) and costs of suit, and such other and further relief as to the court may seem just and proper."

To this complaint a demurrer was filed and overruled. Afterwards the defendant filed the following answer:

" Now comes the defendant in the above entitled action, and for answer to plaintiff's amended complaint herein:

" Denies that said hoisting apparatus or elevator was constructed or arranged, as stated in said complaint, and alleges that the same was constructed in the most approved manner, and of the best material, and was in every way and manner adequate, suitable and proper for the purposes for which the same was constructed and used; denies that defendant neglected his duty in the construction of said elevator, as stated in said complaint, or otherwise; denies that he carelessly, negligently or unskillfully used in the construction thereof, material which was unsuitable or insecure or unsafe; denies that the said elevator was not safe for the uses and purposes for which the same was built and used, and, on the contrary, alleges that the *same was properly and skillfully constructed. of suitable, secure and safe materials and workmanship;* denies that the defendant had any knowledge whatever in regard to any unsuitableness, insecurity or defect therein; denies that plaintiff did not have full knowledge in regard to said elevator and everything pertaining to the same; and, on the contrary, alleges that plaintiff had full knowledge and information, and the means of knowledge and information, in regard thereto, and better knowledge and means of knowledge in regard to the same than had defendant at the time stated; denies that at the time stated plaintiff was exercising due care or caution on his part in the work in which he was engaged, and denies that any accident occurred to, or that plaintiff was injured by or through any negligence, unskillfullness or carelessness of defendant, as stated in

said complaint, or otherwise ; denies that plaintiff was injured without any fault or negligence on his part ; denies that said carriage broke from its fastenings and fell to the ground, as stated in said complaint, by, on account of, through the means or in the manner stated in said complaint.    Defendant has not and cannot obtain sufficient knowledge or information on which to base a belief or make answer in regard to the injuries claimed to have been received by plaintiff, as stated in said complaint, and therefore denies the same.

"Defendant, further answering, alleges that whatever injuries were sustained by the plaintiff were received by, through and on account of the acts, negligence and want of care of plaintiff himself, and of his coemployees. engaged in the same general line of employment, and not by, through or on account of, any act, default or negligence on the part of defendant.

"Defendant, further answering, alleges that in regard to all of the matters and things stated in said complaint, defendant used due care, caution and skill in the construction and maintenance of said machinery and appliances described in said complaint, and used proper materials and workmanship, and that defendant had no knowledge whatever, and no means of knowledge, and, by the exercise of care and diligence, could not have known of any defect therein.

"Wherefore, defendant prays to be dismissed, and to recover his costs in this behalf expended."

The replication puts in issue all new matter alleged in the answer.    Upon these issues the cause was tried to a jury and a verdict returned for plaintiff for $5,267.    A motion for a new trial having been interposed and overruled, judgment was entered upon this verdict, and the defendant brings the case here by appeal.

Messrs. TELLER, ORAHOOD & MORGAN, for appellant.

Mr. B. D. V. REEVE, Mr. J. H. H. LOW and Messrs. DIXON & DIXON, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

This is an action for personal injuries alleged to have been received by plaintiff, Samuel Kane, while in the employ of the defendant, James A. McGonigle.

McGonigle was at the time engaged in the construction of the Pueblo Opera House, as contractor, and Kane was in his employ. The injuries made the basis of this suit resulted from the falling of an elevator provided by the defendant, to be used by plaintiff and others for raising stone and other building material to the upper stories, to be there used in the construction of the building. The elevator was furnished with appliances called "dogs," which were intended to catch above and hold the elevator in place during the time of unloading. Upon the day of the accident, and immediately prior thereto, the elevator had been used in hoisting a building stone, weighing about 250 pounds, to the fourth floor. It was a part of plaintiff's duty to unload this stone, and while so engaged the fastenings above gave way, the elevator and its contents, including plaintiff, were precipitated to the basement below, a distance of about seventy feet. Plaintiff, as the result of this fall, was rendered unconscious for three weeks, his spinal cord was injured and his brain affected. At the time of the trial, three years after the injuries were received, plaintiff was still unable to do any physical labor, and was then, and had been for a period of one year, growing worse instead of better.

The first error relied upon in this court challenges the sufficiency of the amended complaint. This was raised in the trial court in various ways, viz, by demurrer, by objections to the admission of evidence, a motion for a nonsuit, etc. The demurrer, in addition to the general objection that the complaint did not state a cause of action, contained spe-

cific objections to the pleading. The latter were waived, however, by the defendant answering over.

The only question, therefore, presented upon the sufficiency of the amended complaint upon this review is the general one, viz: Does the pleading state a cause of action? The particular objection urged in argument is that the allegations of the employer's negligence are, by reason of their generality, insufficient to warrant a recovery. If it be conceded that the allegations of the complaint are not as definite and certain as good pleading requires, it does not necessarily follow that the pleading is so indefinite and uncertain as to entirely fail to state a cause of action.

The complaint sets up the relation existing between the parties. It describes the elevator and the manner of its construction and operation; it describes with great particularity the fastenings by which the elevator was held in position when it was raised to the upper floors. It sets forth the duty of the master to provide safe and suitable appliances and states that he neglected his duty in this behalf, and built and constructed the elevator in a careless, negligent and unskillful manner, and that he used in the construction thereof material so unsuitable, insecure and unsafe, that the said elevator was not safe for the uses for which it was provided, as the defendant well knew, but the plaintiff did not know. It is alleged that the accident was caused by the elevator breaking from its fastenings. The manner in which the accident happened is set forth in detail, and it is averred that the same resulted from the negligence, unskillfulness and carelessness as above set forth. The specific defect of the machine is pointed out, so that one cannot read the complaint without being advised of the exact cause of action relied upon by the plaintiff.

As a rule, negligence may be pleaded generally. It is an ultimate fact and only ultimate facts are to be pleaded. Bliss, in his work on Code Pleadings, sec. 211 a., says: "The general allegation of negligence is allowed as qualifying an act otherwise not wrongful. It is not the principal act charged

as having caused the injury, but it gives color to the act, makes it a legal wrong; it is the absence of care in doing the act." Negligence being the ultimate fact to be established, a general allegation is sufficient. "To allege more," says Rothrock, J., in *Grinde v. The Milwaukee & St. Paul R. Co.*, 42 Iowa, 376, " would be to plead the evidence, which is not allowable." Upon principle and authority, we conclude that the negligence of the defendant is sufficiently charged and that the complaint states a cause of action.

The motion for a nonsuit was based upon other grounds in addition to the insufficiency of the complaint. There seems to be no foundation for the claim of a variance between the allegations and the proof. Proof that the elevator was removed from the stage and set up in the tower, where it was being operated at the time of the accident, and of the changes that were then made in its construction, was competent under the allegations with reference to its construction. In fact, the proof in this respect follows very closely the allegations of the complaint. That this issue was well understood by the defendant is also apparent from the denials of his answer.

The evidence of negligence on the part of the defendant and of contributory negligence on the part of the plaintiff was for the jury and not for the court to weigh. The proof tends to show that the accident was due to the faulty construction of the apparatus employed to hold the elevator in place, and that the defendant's attention was repeatedly directed thereto, while the proof of contributory negligence is so slight that it would have been a matter of surprise if the jury had decided other than they did upon both questions.

It is claimed that the plaintiff was guilty of negligence in riding up on the elevator after he had been warned not to do so, but it is entirely unnecessary to determine this question, as the accident was in no way attributable thereto, the proof being that the accident occurred while the plaintiff was engaged in unloading the stone, some ten or fifteen minutes after he had been landed in safety upon the upper floor.

That it was proper and necessary for him to go upon the elevator to unload material therefrom stands admitted by the pleadings. And there is little foundation for the claim that plaintiff was negligent in not observing the defect in the elevator as he took no part in its construction, and it does not appear that he had any knowledge of its defective condition. As a general rule, questions of negligence are questions of fact for the jury and not for the court to determine. There is nothing in the evidence to make this case an exception.

A number of errors are assigned upon the admission and rejection of testimony. The plaintiff, Samuel Kane, in his evidence was allowed, against objection, to relate the following conversation had with the engineer at the time he was about to take the elevator and go above, viz:

Q. " Proceed and relate what occurred—you say you asked the engineer if he had full steam? A. I asked if he had steam to hoist this stone and me, and he said 'jump on.' " The witness then proceeded to relate what took place from that time up to the time of the accident. This question was merely preliminary to what followed. The answer could not have had any effect upon the verdict, for, as we have heretofore seen, the plaintiff was hoisted with safety and the accident did not occur until he had been upon the upper floor for some minutes. The plaintiff was also asked two questions, which he was allowed to answer over objections, in regard to whether he had ever been advised or knew of the condition of the elevator as to its being safe or unsafe. We think these questions were entirely proper.

The witness Evans was allowed to give his opinion in regard to the condition of the elevator, with reference to its being a safe or unsafe appliance for the purposes for which it was intended, and this is assigned as error. The witness had previously described the elevator to the jury, giving evidence tending to show that when it was changed from the stage to the tower, certain crossheads on the elevator had been beveled, as directed by the superintendent, Moring, and giving it as his opinion that, after this beveled change

had been made; the "dogs" did not take effect in holding the rods up.   He then said :

"I called Moring's attention to the fact that it did not fit, and asked him if I should change it, and he said he didn't think it was necessary.

Q.  "At the time that that elevator was erected in the tower, with the crosshead beveled in the manner which you have shown to the jury, and the 'dogs' beveled in the manner which you have shown to the jury, was that a safe and proper appliance for the purpose of raising material to the different floors of that building and lodging the same upon the different stories as it was raised?   Objected to by defendant as incompetent, immaterial and irrelevant, and because it was the province of the jury to answer the question put to the witness.   Objection overruled.   Defendant excepts. A. Well, I did not consider it safe or I would not have asked the question should I cut the 'dog' to fit the elevator here (indicating on model).

Q.  "This elevator as it was actually constructed, with the beveled crosshead and the beveled 'dogs,' was that in your opinion a safe or an unsafe machine or appliance for raising stone?   Objected to by defendant as incompetent, irrelevant and immaterial.   Objection overruled.   Defendant excepts. A.  I consider it unsafe, for the simple reason that the 'dogs' didn't fit the head, and the head being beveled, it would naturally have a tendency to slip when taking the load off the elevator and shaking it like that (illustrating on model). The elevator had play between the leads.

"The defendant moved the court to strike out the last portion of the witness' answer.   The court denied the motion.   Defendant excepts."

The objections to these questions, except the first, like all other objections to the evidence, are general in character. The witness had testified that he was a carpenter by trade, and that he, with an assistant had removed the elevator from the stage and set the same up in the tower a few days before the accident; that he was consequently familiar with the

machine and particularly so with the device intended to hold the elevator in place at the top. The witness was examined as an expert and no objection was raised as to his competency. We shall assume, therefore, that his competency as an expert was conceded. We are of the opinion that the questions and answers taken together were competent under the circumstances. The questions were with reference to matters not of common knowledge, but in which men may become expert by study, observation or experience, and their opinions allowed to go to the jury. See *Colorado Midland Railway Company v. O'Brien*, 16 Colo. 219. The *O'Brien Case* was likewise an action for personal injuries alleged to have been caused by the defendant's negligence in the construction and repair of its roadbed. A civil engineer of experience was asked, upon the hypothesis that certain facts were established, if in his opinion the road at the place of the accident was "safe or faulty" for the purposes for which it was then being used. The question was held proper upon appeal, although if the opinion of the witness was accepted by the jury, the principal element going to show negligence on the part of the defendant was established. See, also, Rogers on Expert Testimony, secs. 1–6; *Carpenter v. Central Park R. R. Co.*, 11 Abb. Pr. (N. S.) 416–419; *Muldowney v. Ill. Cent. Ry. Co.*, 36 Iowa, 462; *Tinney v. The New Jersey Steamboat Co.*, 5 Lansing, 507; *Hayward v. Draper et al.*, 3 Allen, 551; *Wiggins v. Wallace*, 19 Barbour, 338; *Sheldon v. Booth*, 50 Iowa, 209.

The instructions given by the court to the jury were full and explicit and we think covered every question of law involved in the case. The instructions asked by the defendant were therefore properly refused.

Finding no error in the proceedings, the judgment will be affirmed.

*Affirmed.*