[No. 4201.]

THE UNITED OIL COMPANY v. ROSEBERRY.

1. **Negligence—Pleading—Evidence.**

In an action against a gas company for injuries sustained from an explosion alleged to have been occasioned by defendant's

negligence where the specific allegation of negligence was that the defendant having been employed by plaintiff to furnish gas from its pipes for heating a stove in plaintiff's house sent an employee to make connection from said pipes to the stove and that said employee negligently turned gas from defendant's pipes into the pipes fitted into the house leading to the stove without making any examination or test to ascertain whether there was any obstruction of said pipes, the allegation was sufficient to charge the company with whatever negligence its employee was guilty of, and it was not error to admit evidence that said employee made no test of the pipes before or after he turned on the gas.

2. **Expert Evidence—Admissibility—Objection.**

Objections to the admissibility of expert testimony that merely go to the form of the question and on the ground that it is not covered by the pleading do not present to the court the objection that expert testimony is inadmissible.

3. **Negligence—Instructions.**

In an action against a gas company for injuries caused by an explosion alleged to have been occasioned by defendant's negligence in connecting its pipes with the pipes in plaintiff's house and turning in gas without having examined or tested the pipes, defendant requested an instruction that "the defendant is not responsible for the condition of the pipes in the cellar if, after its servants put them in, changes were made without its knowledge" was refused and instead the court instructed the jury that "the defendant, if it put in the pipes and left them in proper condition, was entitled to presume that they remained in that condition when it was asked to turn the gas on and connect the range, in the absence of notice that changes had been made in the meantime." Held not error to refuse the instruction asked and that the instruction given was as favorable to defendant as should have been given.

4. **Negligence—Evidence.**

In an action against a gas company for injuries caused by an explosion where defendant's own testimony shows that its employee sent to connect the pipes of the company with those leading into the house where the explosion occurred, discovered that the gas burned with an unusually feeble flame but failed to make an examination of the pipes and failed to turn off the gas, and that another employee sent by the company to examine for the leak negligently failed to turn off the gas or to warn the inhabitants of the house of the danger of an explosion, the company was responsible for the negligence of its employees, and its negligence being shown by its own testimony, expert testi-

mony introduced by plaintiff as to the necessity of an examination of the pipes leading into the house before connecting them with the pipes of the company and turning in the gas, even if erroneous, was without prejudice.

*Appeal from the District Court of Fremont County.*

Mr. HENRY F. MAY, for appellant.

Mr. J. G. WATERS and Mr. LEE CHAMPION, for appellee.

Mr. JUSTICE STEELE delivered the opinion of the court.

During the month of March, 1898, an explosion of natural gas demolished a dwelling house in which the appellee and his family were residing. The appellee, his wife, and daughter sustained serious personal injuries, and suit was brought by them in the district court of Fremont county against The United Oil Company, the appellant, to recover damages. The amended complaint alleges that The United Oil Company is a corporation organized under the laws of the state, for the purpose, among other things, of engaging in and transacting the business of supplying the public generally with gas for heating purposes; that the explosion was occasioned by the negligence and carelessness of the said corporation. Then follows a detailed account of the events leading up to and following the explosion. The following allegation is contained in the amended complaint: "That said injuries of plaintiff were so received and said explosion was occasioned, directly and proximately, by the negligence and carelessness of the defendant, and its officers, agents and employees, and in this, that the defendant, having been employed by the plaintiff to furnish gas from its pipes for heating a stove in the kitchen of said dwelling, sent one Taylor, then in its employment, to make connection from

defendant's pipes to and with said stove; that the said Taylor negligently and carelessly turned the gas from defendant's pipes into the pipes fitted into said house, leading to said stove and running through the cellar under the kitchen, without making any examination or test to ascertain or know whether there was any obstruction of said pipes or not."

In the answer it is alleged that the injury and damage, if any, was caused by the negligence and carelessness of the plaintiff; that the premises mentioned in the complaint were the property of John T. Miller, and that said Miller was in possession and control thereof. That after the construction and fitting and connection of said pipes in said dwelling, the said company caused them to be examined and inspected, and found that they were in good and safe condition so that gas could not escape therefrom. That thereafter, without the defendant's knowledge, said Miller changed the connections, fittings and condition of said pipes, so that after said change the gas could and did escape therefrom. That in making the said change a cap was negligently left off or taken from a tap of the house pipes in the cellar of said dwelling, of which the defendant company was not notified.

Upon the trial, the following question was asked of the plaintiff, Roseberry: "Q. During the time you were there when Taylor was there, did Taylor make an examination or test, or look out for a leak?"

This question was objected to as not being covered by the pleadings; the objection was overruled, and the witness permitted to answer. "A. I didn't see him do anything, sir."

The following question was asked the witness Dolan: "Q. I will ask you this question as an expert: When a house is fitted with gas pipes for heating purposes, is there any examination or inspec-

tion of those pipes necessary to be made before you turn on the gas?"

The following objection was made: "I object to that as not covered by the pleadings. The only allegation in the pleadings is that Mr. Taylor failed to make any test or examination. There is no allegation that the defendant failed to make a test or examination otherwise than that." And also, "Because it can not be relevant; as to whether it is necessary or not can not be competent in this case. This is not based upon the pleadings: this is based upon the form of the question."

The objections were overruled. The witness answered: "A. It is necessary."

The witness Julian, an architect, was asked substantially the same questions; similar objections were made; the objections were overruled, and the witness was permitted to answer.

In instructions 2, 6, and 7 the court, in substance, charges the jury that it was the company's duty, before it connected its appliances for conveying gas to the house of plaintiff for burning there, to exercise reasonable and ordinary care in ascertaining, by inspection or otherwise, whether such pipes were in a reasonably safe condition for conveying gas for the purposes intended, and that if the company made such connection and turned on and lighted the gas, and permitted the same to remain burning, when the plug or tap was off the end of the service pipe in the cellar, without then making, or having at any time theretofore made, an inspection of the system of pipes then such conduct was negligent and careless.

The company offered the following instruction: "The defendant is not responsible for the condition of the pipes in the cellar if, after its servants put them in, changes were made without its knowledge." This was refused. The court gave, as instruction No.

9, the following: "The defendant, if it put in the pipes and left them in proper condition, was entitled to presume that they remained in that condition when it was asked to turn the gas on and connect the range, in the absence of notice that changes had been made in the meantime."

The undisputed facts disclosed by the testimony are, that the premises in question were rented by Roseberry from Miller; that Roseberry was required by the rules of the company to employ the company to make the connection, and that he did employ the company to connect the range and to turn on the gas; that the connection was made and the gas turned on and lighted by a man named Taylor, an employee of the company; that the gas, when lighted, was found to burn with an insufficient flame, indicating, as witness Taylor said, a very low pressure or an obstruction in the pipes; that Taylor left the premises without turning off the gas or making an inspection of the pipes; that Taylor reported the facts to the foreman for the company, a man named Preston; that about two hours after the gas was turned on by Taylor, Preston came to the house "to see the condition of the gas and fire at that time—fire in the stove." Preston then states: "I found the fire in the stove burning a little below, or somewhat below, its normal condition that it usually is burning. I turned out the fire in the stove, opened it again and listened to it, listened to the pressure of the gas coming through, lifted the lid off the stove and looked into it and again closed the lid, opened the cellar door, trap door, and went down cellar. I didn't turn it out so but what it would relight itself. I left the lids on the stove when I went to the cellar. When I went down cellar I found escaping gas from an aperture at the end of the lower service pipe leading to the house. I put my hand over the aperture to check

the flow of gas. I looked around in my pocket to find a piece of waste, which I usually carry, and I couldn't find any; then I looked for a piece of paper or cloth or something, on the floor, to stop it with, and I couldn't find anything there. I went to ask them to hand me a cloth from overhead; I think I spoke once or twice, I think I spoke the second time, and as I was speaking the second time, before I could finish my sentence, the explosion took place."

Three cases were consolidated for trial. The jury rendered a verdict for the sum of $3,013 in favor of the plaintiff, Benjamin S. Roseberry. No question is raised as to the amount of the verdict.

We will consider the questions presented by the assignments of error in the order they are presented in the brief of counsel.

It is first contended by counsel for the company that the court erred in permitting the plaintiff to go into the question whether or not examinations or tests of the pipes in the dwelling were or ought to have been made, because the pleadings do not allege that the defendant made no examination or test. The complaint does not charge that the defendant failed to make a test of the pipes, but it does charge that Taylor, the representative of the company, failed to make a test or examination, and this is sufficient to charge the company with whatever negligence Taylor was guilty of.

The court did not err in permitting witnesses to testify that Taylor made no test of the pipes before or after he turned on the gas, nor in permitting witnesses to testify that he lighted the gas and left it burning in the stove.

It is next urged that the court erred in permitting the witness Dolan, a master plumber, steam and gas fitter, and Julian, an architect, to testify that to

ascertain whether leaks exist it is necessary to make a test or examination of the pipe.

We are of opinion that the objection to the form of the question did not present to the court the objection that expert testimony was inadmissible, and we think it not necessary to determine whether, in a case such as this, testimony of this character may be received over objection. And we shall presently decide that, assuming a proper objection to have been made and that opinion testimony in a case of this character should not be received over such objection, the reception of such testimony was not prejudicial to the defendant, because the verdict should be sustained upon the testimony of the defendant alone.

As the rules of the company required Roseberry to have the connection made by an employee of the company, he had a right to expect that the company's employees would make the connection in a safe and skilful manner.

The instruction given by the court concerning the presumption that the pipes remained in proper condition, in the absence of notice that a change had been made, is as favorable to the company as should have been given; and the court did not err in refusing the instruction offered. Indeed, we doubt very much if the instruction given by the court is not more favorable to the company than the law authorizes. It seems to us that in dealing with Roseberry the company was bound to see that its pipes were in proper condition, and this without regard to their condition at some other time. We quote with approval the following language from *Koelsch v. The Philadelphia Co.,* 152 Pa. St. 355: "The definitions of negligence which have been attempted imply that a higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involve little or no risk of in-

jury to person or property. While no absolute standard of duty in dealing with such agencies can be prescribed, it is safe to say in general terms that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken. This would require in the case of a gas company not only that its pipes and fittings should be of such material and workmanship, and laid in the ground with such skill and care, as to provide against the escape of gas therefrom when new, but that such system of inspection should be maintained as would insure reasonable promptness in the detection of leaks that might occur from the deterioration of the material of the pipes, or from any other cause within the circumspection of men of ordinary skill in business."

Although the witnesses of the defendant say that the cap or plug in question was in place when the employees of the company finished their work upon the building, there is no testimony which shows that any inspection or test of the pipes after they were put in place was ever made. But we do not base our opinion upon the fact that no test was made by the company after it put the pipes in place and before Taylor was called upon to make the connection. We are of the opinion that the testimony of the defendant shows that Taylor was negligent in failing to make an examination of the pipes upon discovering that the gas burned with an unusually feeble flame, and that he was negligent in not turning off the gas when he left the premises. That Preston was negligent in not turning off the gas when he commenced his search for a leak, and negligent in not warning the plaintiff and his family of the danger of an explosion, and that for all of these acts the company is responsible.

These acts of negligence having been shown by the

testimony of the defendant, if the court had taken from the consideration of the jury all questions save that of the amount of damages to be awarded, we should have affirmed the judgment.

For the reasons given, the judgment is affirmed.

*Affirmed.*